**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD F. FIGAS, JAMES R.** | ) | |
| **MCCABE, EDDIE W. ROBINSON,** | ) | |
| **GARY B. SHAFFER, WILLIAM C.** | ) | |
| **TEETS, JOHN MARCHITELLI,** | ) | |
| **BERNIE HALL, PHILLIP LUCCI,** | ) | |
| **and DENNIS K. POWELL, on behalf** | ) | |
| **of themselves and all other similarly** | ) | |
| **situated individuals,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1344** |
| | ) | **Electronic Filing** |
| **HORSEHEAD CORPORATION,** | ) | |
| **HORSEHEAD CORP., a/k/a ZINC** | ) | |
| **CORPORATION OF AMERICA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

This matter comes before the Court on the Defendants' Motion for Summary Judgment (*Document No. 45*) and the Defendants' Motion to Strike (*Document No. 53*).  For the reasons that follow, the Motion for Summary Judgment will be granted in part and denied in part, and the Motion to Strike will be denied as moot.

## II.   BACKGROUND

Plaintiffs Richard F. Figas ("Figas"), James R. McCabe ("McCabe"), Eddie W. Robinson ("Robinson"), Gary B. Shaffer ("Shaffer"), William C. Teets ("Teets"), John Marchitelli ("Marchitelli"), Bernie Hall ("Hall"), Philip Lucci ("Lucci") and Dennis K. Powell ("Powell")

(collectively referred to as the "Plaintiffs") filed a representative action complaint on October 7,

2006, against Defendants Horsehead Corporation, Horsehead Corp., a/k/a Zinc Corporation of

America (collectively referred to as "Horsehead"), alleging violations of the Fair Labor Standards

Act of 1938 ("FLSA") [29 U.S.C. § 201 *et seq.*].  Doc. No. 1.  Many of the facts relevant to the

issues presently before the Court have been stipulated to by the parties.

Horsehead operates a zinc processing facility in Monaca, Pennsylvania.  Joint Stipulation

of Undisputed Facts (Doc. No. 42-2) at ¶ 1.  Horsehead employs production and maintenance

employees.  *Id.* at ¶ 2.  These employees are represented by Local 8183 of the United

Steelworkers of America, AFL-CIO-CLC ("Local 8183").  *Id.*  Horsehead and Local 8183 are

parties to a collective bargaining agreement.  *Id.* at ¶ 3.  The employees who comprise the

prospective collective class include those individuals who are, or have been, employed in

Horsehead's hourly production and maintenance positions.[1]  *Id.* at ¶ 4.  Most production and

maintenance employees are required to wear "protective clothing" throughout the course of their

workday.[2]  *Id.* at ¶ 5.  Consequently, most of them are required to don their protective clothing

before performing their daily tasks and to doff their protective clothing after completing such

tasks.  *Id.*  Employees in the lead and cadmium program are required to shower before exiting the

facility at the end of the day.  *Id.*

---

[1]Horsehead reserves the right to contend that this action cannot proceed as a collective action pursuant to 29 U.S.C. § 216(b), and that class certification is not proper under Federal Rule of Civil Procedure 23.  Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 4, n. 1.  Those issues are not pertinent to the motions currently pending before the Court and, hence, will not be addressed in this memorandum opinion.

[2]The parties have used the term "protective clothing" in their stipulation with the understanding that such term "shall have no legal significance."  Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 5, n. 2.  Like the parties, the Court uses the term "protective clothing" only for descriptive purposes, and does not intend its use of the term to be characterized as a legal conclusion that the materials worn by the employees are, in fact, "clothes."

Those employed in the lead and cadmium program are under more stringent requirements than those working in other Horsehead programs. The stipulation describes the daily donning and doffing procedures engaged in by one of these employees on a typical day. *Id.* at ¶ 6. Upon his arrival for work, such an employee picks up his time card at the guard shack before entering the locker room. *Id.* On the "clean side" of the locker room, he removes his regular clothes. *Id.* He then walks to the "dirty side" of the locker room, where he dons a flame retardant green jacket, pants or coveralls, a hard hat, and work shoes. *Id.* The jacket, pants and/or coveralls are referred to as "Greens." *Id.* After changing into his Greens, the employee either rides or walks to his particular worksite, depending on the distance. *Id.* At his worksite, he punches his timecard and begins to work his regular shift. *Id.* When his shift is complete, he punches his timecard before leaving the worksite.[3] *Id.* Before leaving the facility, he returns to the dirty side of the locker room, where he removes his Greens, hard hat and shoes. *Id.* He then proceeds to take a shower. *Id.* After showering, he proceeds to the clean side of the locker room, where he changes into his regular clothes. *Id.* At that point, he is free to leave the facility. Although some employees opt to don and doff their Greens at their worksites, most follow the procedure described above. *Id.*

Employees who are not in the lead and cadmium program don and doff in a similar manner, with a few exceptions. Instead of wearing Greens, they wear flame retardant grey jackets and pants, which are referred to as "Greys."[4] *Id.* at ¶ 7. They are not required to don and

---

[3]Some employees punch out about ten minutes before the end of their work shift but still get paid for this time. Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 6, n. 3.

[4]There are some Horsehead employees who are permitted to wear their own clothes while working and, hence, are not required to don and doff at all. Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 7, n. 4. The daily activities of such employees are not implicated in this case.

doff on the dirty side of the locker room, nor are they required to shower after working their shifts. *Id.* Although Horsehead apparently launders the Greens worn by lead and cadmium program employees, it does not launder the Greys worn by other employees. *Id.*

Horsehead has a "practice" of not paying its employees for the time that they spend donning and doffing their Greens or Greys, the time that they spend showering, and the time that they spend walking to and from the locker room (collectively referred to as "contested time").[5] *Id.* at ¶¶ 8-9. The Plaintiffs in this case concede that they have been properly paid for all of their other work-related activities. *Id.* at ¶ 10.

Local 8183 has represented the production and maintenance workers at Horsehead's Monaca facility since the 1970's. Second Joint Stipulation of Undisputed Facts (Doc. No. 44) at ¶ 1. The issue of payment for contested time was raised by neither Local 8183 nor Horsehead during collective bargaining negotiations prior to November 2007. *Id.* at ¶ 2. Consequently, the collective bargaining agreement between them does not expressly address the issue. Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 11. On April 26, 2006, Local 8183 filed a grievance seeking payment for contested time, relying on the decision of the United States Supreme Court in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). Second Joint Stipulation of Undisputed Facts (Doc. No. 44) at ¶ 3. Horsehead denied the grievance two days later. *Id.* at ¶ 4. Local 8183 processed the grievance to the Third Step. *Id.* at ¶ 5. On May 18, 2006, a meeting was held between Local 8183 and Horsehead. *Id.* Horsehead again denied the grievance five days later. *Id.* In a letter dated May 29, 2006, Local 8183 notified Horsehead that it had decided

---

[5]The Court's use of the word "practice," which is used in the parties' stipulation, is not meant to connote any form of legal significance. Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 9.

to move the grievance to the Fourth Step. *Id.* at ¶ 6. Nevertheless, no Step Four grievance meeting occurred. *Id.* at ¶ 7.

The Plaintiffs commenced this action against Horsehead on October 7, 2006, alleging violations of the FLSA. Doc. No. 1. Since that time, Local 8183 and Horsehead have negotiated a new collective bargaining agreement. Second Joint Stipulation of Undisputed Facts (Doc. No. 44) at ¶ 9. On November 7, 2007, as collective bargaining negotiations were underway, Horsehead made a proposal providing for the relevant employees to receive one hour per week of compensation for the contested time. *Id.* at 10; Doc. No. 44-6 at 3. Local 8183 rejected this proposal. Second Joint Stipulation of Undisputed Facts (Doc. No. 44) at ¶ 10.

On November 12, 2007, the parties filed a Joint Motion to Bifurcate and Stay, asking the Court to permit Horsehead to move for summary judgment solely with respect to two distinct issues concerning the FLSA and the Portal-to-Portal Act of 1947 ("Portal Act") [29 U.S.C. § 251 *et seq.*]. Doc. No. 42. The Court granted this motion on November 15, 2007, thereby staying discovery as to all issues other than whether Horsehead is entitled to summary judgment on the basis of § 3(o) of the FLSA [29 U.S.C. § 203(o)] or § 4(a) of the Portal Act [29 U.S.C. § 254(a)]. Doc. No. 43. One month of limited discovery was permitted with respect to these two issues. *Id.* On January 15, 2008, Horsehead filed a Motion for Summary Judgment. Doc. No. 45. In support of this motion, Horsehead contends that the Plaintiffs' claims are precluded by § 3(o) of the FLSA and/or § 4(a) of the Portal Act. In the alternative, Horsehead contends that it is entitled to the affirmative defense available under § 10 of the Portal Act [29 U.S.C. § 259] or, at a minimum, a determination in accordance with § 11 of the Portal Act [29 U.S.C. § 260] that liquidated damages should not be awarded in this case. *Id.* Finally, Horsehead argues that even

if it violated the FLSA, it did not do so willfully, and that its liability should be limited to two years prior to the date on which the Plaintiffs commenced this action.  29 U.S.C. § 255(a).  At the present time, the Court's inquiry is limited to these issues, since the parties agree that it would not serve their interests to engage in costly discovery that may ultimately prove to be unnecessary.

In their responsive brief, the Plaintiffs call the Court's attention to the fact that the Occupational Safety and Health Administration ("OSHA") cited Horsehead on January 10, 2006, for failing to protect its employees from exposure to lead and cadmium.  Doc. No. 51 at 2, n. 1.  Horsehead moves to strike this information on the ground that is inadmissible under the Federal Rules of Evidence.  Doc. No. 53.  This Motion to Strike is currently pending before the Court and, hence, will be addressed in this memorandum opinion.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all reasonable inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Fed. R. Civ. P. 56(c)*.  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  When the movant does not bear the burden of proof on the claim, the movant's

initial burden may be met by demonstrating a lack of record evidence to support the opponent's claim. *National State Bank v. National Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the nonmoving party must set forth specific facts which show that there is a genuine issue for trial. Otherwise, the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Electric Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The opponent cannot rely on conclusory assertions in its pleadings and briefs. Mere conjecture or speculation by the party resisting a motion for summary judgment will not provide a basis for the court to deny the motion. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382-383, n. 12 (3d Cir. 1990). If the nonmoving party's evidence is merely colorable or otherwise lacks probative force, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250; see also *Big Apple BMW, Inc. v. BMW of North America*, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993)(noting that while the court is not permitted to weigh the evidence or determine the facts, it is not required to "turn a blind eye" to the weight of the evidence).

**IV.    DISCUSSION**

It is axiomatic that the FLSA requires employers to pay their employees for the time that they spend doing "work." *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006).  The United States Supreme Court has consistently noted that, in this context, the term "work" has a very broad meaning.  In *Tennessee Coal, Iron & Rail Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944), the Supreme Court defined work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  Even this definition, however, is broader than it sounds, since activities need not involve true "exertion" in order to constitute work.  *DeAsencio v. Tyson Foods, Inc.*, 500 F.3d 361, 363-373 (3d Cir. 2007).  In *Armour & Co. v. Wantock*, 323 U.S. 126 (1944), the Supreme Court explained:

> Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.  Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity.  Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer.  Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.

*Armour*, 323 U.S. at 133.  Two years later, in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-691 (1946), the Supreme Court declared that, for purposes of the FLSA, "the statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."  Under the circumstances of the present case, it is undisputed that the time spent by the Plaintiffs to don and doff their Greens and Greys constitutes work for purposes of the FLSA.  The critical issues in this case concern the

construction and application of two statutory amendments to the FLSA.

The Supreme Court's broad view of the word "work" led Congress to conclude that the FLSA had been "interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers . . ."  29 U.S.C. § 251(a).

Thus, in 1947, Congress enacted § 4(a) of the Portal Act, which is codified at 29 U.S.C. § 254(a).  Pub. L. No. 80-49, § 4(a), 61 Stat. 84, 86-87 (1947).  That statutory language provides:

> **§ 254.  Relief from liability and punishment under the Fair Labor Standards Act of 1938, the Walsh-Healy Act, and the Bacon-Davis Act for failure to pay minimum wage or overtime compensation**
>
> **(a) Activities not compensable.**  Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201 *et seq.*], the Walsh-Healey Act [41 U.S.C. § 35 *et seq.*], or the Bacon-Davis Act [40 U.S.C. § 276a *et seq.*], on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act [May 14, 1947]--
>> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).[6]  As the plain language of the statute indicates, the Portal Act narrows the

---

[6]Subsection (b) provides that an employer is not relieved of liability for failing to compensate employees for otherwise excluded activities where such activities are made compensable by an express provision of a contract or by a custom or practice.  29 U.S.C. § 254(b).  Since no contract, custom or practice makes the time spent by Horsehead's employees donning, doffing and washing compensable, the Court need not concern itself with subsection (b).

"activities" for which the FLSA entitles an employee to compensation, with the caveat that nonprincipal activities remain compensable where they occur during the course of, rather than before or after, a "continuous workday."

Concerned that the Portal Act had not closed all of the undesired loopholes left by the Supreme Court's expansive construction of the FLSA, Congress amended the FLSA again in 1949. Section 3(o) of the Fair Labor Standards Amendments of 1949 added the following statutory language to 29 U.S.C. § 203, which is the "Definitions" section of the FLSA:

> **§ 203. Definitions**
>
> \*\*\*
> (o) Hours Worked. In determining for the purposes of sections 6 and 7 [29 U.S.C. §§ 206 and 207] the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

Pub. L. No. 81-393, § 3(o), 63 Stat. 910, 911 (1949); 29 U.S.C. § 203(o). Given the plain language of this statute, a collective bargaining agreement may exclude "time spent in changing clothes or washing at the beginning or end of each workday" from the amount of time for which an employee is entitled to compensation.

Horsehead contends that the Plaintiffs' claims are barred by § 254(a) of the Portal Act and § 203(o) of the FLSA. Generally speaking, its argument concerning § 254(a) is dependent upon its argument concerning § 203(o). Horsehead argues that the time that its employees spend donning and doffing their Greens and Greys constitutes time "changing clothes" within the meaning of § 203(o). There is no dispute that the time spent by lead and cadmium program

employees showering in the locker room constitutes "washing" time for purposes of the statutory language. Horsehead contends that, because the Plaintiffs have stipulated that Horsehead has a "practice" of not paying its employees for the contested time, their claims for donning, doffing and showering time are precluded by § 203(o). Assuming this to be true, Horsehead goes on to argue that the time spent by its employees walking or riding to and from the locker room (after donning and before doffing) constitutes a "preliminary" (in the case of post-donning movement) or "postliminary" (in the case of pre-doffing movement) activity for purposes of § 254(a) *because* the application of § 203(o) precludes a determination that the donning and doffing activities are themselves compensable "principal" activities. The cumulative effect of this reasoning, of course, would preclude the Plaintiffs from recovering compensation for any of the contested time. Doc. No. 46 at 3-15. The Plaintiffs attack each link of this chain. First, they contend that the Greens and Greys worn by them during the course of a workday do not constitute "clothes" for purposes of § 203(o). Second, they assert that Horsehead cannot establish that its "practice" of not paying its employees for the contested time can be fairly characterized as being "under a bona fide collective bargaining agreement" within the meaning of § 203(o). Finally, they argue that even if it is assumed that recovery for their donning, doffing and showering time is precluded by § 203(o), their walking or riding time is nevertheless compensable on the ground that it follows (in the case of donning) and precedes (in the case of doffing) "principle" activities under § 254(a). This third argument relies on the premise that while § 203(o) may diminish the quantity of time for which they can seek compensation under the FLSA, it does not change the meaning of the phrase "principal activity or activities" found in the Portal Act. Doc. No. 51 at 6-22. The Court will proceed to address each of these three issues

11

seriatim.

**A. "Changing Clothes" Under § 203(o)**

In order to succeed in a defense under § 203(o) with respect to an employee, a defendant must establish that the time for which compensation is sought constitutes "time spent in *changing clothes* or *washing* at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or *by custom or practice under a bona fide collective-bargaining agreement* applicable to the particular employee." 29 U.S.C. § 203(o)(emphasis added). Inherent in this defense are two separate elements, the first of which is time spent by an employee engaging in the requisite statutory conduct (i.e., the act of "changing clothes or washing") and the second of which is the existence of a bona fide collective-bargaining agreement which (either expressly or implicitly) excludes such time from the employee's compensable workweek. In order to obtain summary judgment, Horsehead must satisfy both of the statutory criteria. *Kassa v. Kerry, Inc.*, 487 F.Supp.2d 1063, 1065 (D.Minn. 2007).

Before addressing the terms of the collective-bargaining agreement between Horsehead and Local 8183, the Court must determine whether the Plaintiffs *change* their *clothes* when they don and doff their Greens or Greys.[7] The application of the word "change" in this case is

---

[7]In a footnote appearing in their brief opposing Horsehead's Motion for Summary Judgment, the Plaintiffs indicate that they are withdrawing their claims for "showering" time pursuant to a concession that such time is excluded by § 203(o). Doc. No. 51 at 3, n. 5. They correctly believe that "showering" at the conclusion of a shift constitutes "washing" for purposes of § 203(o). The crux of their argument is that the donning and doffing of their Greens or Greys do not constitute "changing clothes" within the meaning of the statutory language. Nevertheless, it is not clear to the Court why the Plaintiffs, while correctly conceding that "showering" constitutes "washing," make the further concession that showering time is excluded by § 203(o). That would depend on whether the collective-bargaining agreement between Horsehead and Local 8183 contains terms which expressly or implicitly exclude such time from the Plaintiffs' compensatory workweek. The Plaintiffs clearly argue that Horsehead cannot meet the second statutory criterion essential to its § 203(o) defense (i.e., the existence of a custom or practice of not paying employees for the contested time which, through acquiescence, has been implicitly incorporated into the applicable

relatively straightforward.  In this context, "change" is a verb which means "to make different in some particular."  *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003).  Although the issue has not been fully developed in the relevant jurisprudence, courts have generally not accorded much significance to whether the donning of "clothes" requires an employee to either undress completely or remove a particular piece of clothing.  *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 956 (11th Cir. 2007)("Nothing in the statute's language suggests that its application turns on whether one must fully disrobe or exchange one shirt, for example, for another.  Therefore, we conclude that one need not *exchange* clothes to *change* clothes for the purpose of applying § 203(o).")(emphasis added).  Assuming that the garments donned by the employee constitute "clothes," the "change" requirement is satisfied where articles of clothing are added, even if nothing previously worn is removed.[8]  Even if that were not the case, however, the undisputed facts of this case would nevertheless fall neatly within the statutory language.  The parties have stipulated that lead and cadmium program employees are required to disrobe on the clean side of the locker room before donning their Greens on the dirty side.  Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 6.  While other employees are not required to don and doff their Greys

---

collective-bargaining agreement).  *Id.* at 15-17.  Given the dispute as to the second criterion, it is not clear why the Plaintiffs see fit to withdraw their claims for showering time merely because showering constitutes "washing" under § 203(o).

[8]This does not mean that the question of whether an employee is required to undress or otherwise remove articles of clothing is wholly irrelevant to the inquiry.  In some instances, courts have noted that garments are more likely to constitute "clothes" where they *replace* (rather than merely *cover*) an employee's regular clothes.  *Spoerle v. Kraft Foods Global, Inc.*, 527 F.Supp.2d 860, 867 (W.D.Wis. 2007)(according some significance to whether the garments donned are materials that "the employee would normally wear anyway," whether they "replace" regular clothing, or whether they are worn "in addition to" regular clothing).  This factor, however, seems to have more to do with whether the materials themselves constitute "clothes" than it does with whether a "change" occurs when they are donned.

on the dirty side, the stipulation indicates that their daily activities are not otherwise different.[9]

*Id.* at ¶ 7.  Hence, it appears that all of the Plaintiffs (including those who wear Greys) are

required to undress somewhere in Horsehead's locker room in order to don their work gear.

Under these circumstances, there is no dispute concerning the statute's use of the word "change."

The parties vigorously dispute the question of whether the Greens and Greys worn by

Horsehead employees constitute "clothes" within the meaning of the statute.  They also dispute

the applicable standard for evaluating the question in the first place.  The Plaintiffs view § 203(o)

as an "exemption," whereas Horsehead views it as an "exclusion."  This distinction is important

because of the Supreme Court's admonition that exemptions contained in the FLSA must be

narrowly construed against employers attempting to rely on them, and that their application is

limited to instances in which their "terms and spirit" are deemed to be "plainly and

unmistakably" applicable.  *Arnold v. Ben Kanowsky*, 361 U.S. 388, 392 (1960).  The Plaintiffs

argue that this strict rule of construction applies to the word "clothes" appearing within the text

of § 203(o), while Horsehead argues that the word "clothes" should be accorded its most natural

meaning.

The Plaintiffs' argument has its genesis in the decision of the United States Court of

Appeals for the Ninth Circuit in *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003).[10]  In *Alvarez*,

---

[9]Employees who wear Greys apparently have the option of laundering them on their own.  Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 7.  It is not clear whether this means that they may "change" into their Greys before arriving for work.  Since the stipulation expressly states that the daily activities of these employees are the same as those who wear Greens except as otherwise stated therein, the Court does not read more into the stipulation than the parties have set forth.  Thus, the Court understands the parties' stipulation to mean that employees who wear Greys are required to remove their regular clothes in the locker room before donning their Greys.

[10]Although the Supreme Court ultimately affirmed a determination made by the Ninth Circuit in *Alvarez*, it did not address the application of § 203(o).  *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005).  The Supreme Court's decision will be discussed in the portion of this opinion concerning the Portal Act's application in this case.

the Ninth Circuit relied on the Supreme Court's decision in *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960), to conclude that § 203(o) can be applied only where the particular garments at issue "plainly and unmistakably" fall within the meaning of the word "clothes." *Alvarez*, 339 F.3d at 905 ("The protective gear at issue does not 'plainly and unmistakably' fit within § 3(o)'s 'clothing' term. Absent such a plain and clear § 3(o) fit, *Arnold* requires that we construe § 3(o)'s [language] against the employer seeking to assert it. 361 U.S. at 392. Thus, the exemption must be construed against IBP."). *Arnold* did not involve § 203(o). Instead, it involved provisions of the FLSA exempting specified retail sales and service establishments from the FLSA's substantive provisions. *Arnold*, 361 U.S. at 389-392. Unlike § 203(o), which merely excludes specified time from "the hours for which an employee is employed," the provisions at issue in *Arnold* exempted certain *establishments* from FLSA coverage entirely. *Id.* at 392 ("We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those *establishments* plainly and unmistakably within their terms and spirit.")(emphasis added). If nothing else, the difference between these two types of provisions lends some degree of force to Horsehead's argument that § 203(o) should not be construed as narrowly as the Plaintiffs suggest. An *exemption* which denies FLSA protection altogether to a category of employees differs meaningfully from an *exclusion* which merely operates to define the terms and scope of the statutory protection provided to those who do enjoy such protection.

The statutory structure of the FLSA also counsels against the rule of construction adopted by the Ninth Circuit in *Alvarez* and advanced by the Plaintiffs in this case. The provisions construed by the Supreme Court in *Arnold* were contained in § 13(a) of the FLSA, which is

codified at 29 U.S.C. § 213(a). *Id.* at 389-392. Section 213(a) appears in the United States Code

under a heading entitled "Exemptions." 29 U.S.C. § 213. In contrast, § 203(o) appears in the

"Definitions" section of the FLSA. 29 U.S.C. § 203. The United States Court of Appeals for the

Eleventh Circuit found this to be significant in *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir.

2007), holding that § 203(o) was an "exclusion" rather than an "exemption." *Anderson*, 488 F.3d

at 957 ("Had Congress sought to bestow upon § 203(o) the same status as the exemptions set

forth in § 213, it easily could have amended § 213 instead of § 203, which is titled, not

coincidentally, 'Definitions.'"). The Eleventh Circuit explained that while it had previously

referred to § 203(o) as an exemption, this reference had not been intended as a term of art

requiring the application of the rule of construction employed in *Arnold* and *Alvarez*. *Id.* at 957

("Therefore, although this court once, in *dicta*, referred to § 203(o) as an exemption, *Mitchell v.*

*Se Carbon Paper Co.*, 228 F.2d 934, 937 (5th Cir. 1955), having today addressed the issue for the

first time, we conclude that § 203(o) is not an exemption under the FLSA but is instead a

definition that limits the scope of the FLSA's key minimum wage and maximum hour

provisions.")(footnote omitted).[11]

      In support of their argument, the Plaintiffs call the Court's attention to the decision of the

United States District Court for the Middle District of Pennsylvania in *In Re Cargill Meat*

*Solutions Wage & Hour Litigation*, 2008 U.S. Dist. LEXIS 31824 (M.D.Pa. April 10, 2008). In

*Cargill*, the District Court applied the strict rule of construction advanced by the Plaintiffs to §

203(o). *Cargill*, 2008 U.S. Dist. LEXIS 31824 at *43-45. The District Court relied on the

---

[11]Decisions of the United States Court of Appeals for the Fifth Circuit rendered prior to the close of
business on September 30, 1981, are treated as precedential decisions in the Eleventh Circuit. *Bonner v. City of*
*Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

Supreme Court's decision in *Holly Farms Corp. v. National Labor Relations Board*, 517 U.S. 392 (1996), for the proposition that "an exception contained in § 203 should not be treated differently from an exception contained in § 213." *Id.* at *44. *Holly Farms*, however, involved the application of an exemption to the National Labor Relations Act ("NLRA"). *Holly Farms*, 517 U.S. at 394-408. The NLRA's definition of the term "employee" specifically excluded "any individual employed as an agricultural laborer." 29 U.S.C. § 152(3). Although the NLRA did not define the term "agricultural laborer," Congress had instructed, in riders to appropriations bills, that the term was to be defined by reference to the FLSA's definition of the term "agriculture," which was codified at 29 U.S.C. § 203(f). *Holly Farms*, 517 U.S. at 397. The Supreme Court concluded that Congress had attempted to "cabin the exemption" contained in the NLRA by incorporating the FLSA's definition of the term "agriculture." *Id.* at 399, n. 6. Thus, what was really at issue was whether the NLRA's coverage extended to a certain category of *workers*, not whether the FLSA somehow *excluded* (or, as the Plaintiffs would prefer, *exempted*) otherwise compensable *time* from the workday of a worker who admittedly enjoyed some degree of statutory protection. *Id.* at 399 ("We note, furthermore, that administrators and reviewing courts must take care to assure that exemptions from NLRA *coverage* are not so expansively interpreted as to deny protection to *workers* the Act was designed to reach.")(emphasis added). This layered, indirect approach was necessary to decide the issue before the Supreme Court in *Holly Farms*, but it provides little guidance as to the meaning of the word "clothes" contained in § 203(o).

Even if *Holly Farms* were properly understood to provide general guidance as to how the definitions contained in § 203 should be construed, § 203(o) is dissimilar to the rest of § 203. In

that section, Congress went through almost the entire alphabet defining various terms, each of which appears in parentheses.  Subsections (a)-(n) define such terms, as do subsections (p)-(x).  29 U.S.C. § 203.  Subsection (o) is the *only* subsection that contains no defined term appearing in parentheses.  29 U.S.C. § 203(o).  Although it appears in the "Definitions" section of the FLSA, § 203(o) contains no *defined* term.  Instead, it is a stand-alone statutory provision providing for the *exclusion*, for purposes of determining an employee's work hours, of "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."  *Id.*  This statutory provision is in a class by itself.  Thus, neither the decisions construing the exemptions contained in § 213 nor the decisions interpreting other portions of § 203 are particularly instructive as to how the word "clothes" should be construed in this case.

Not only do the exemptions contained in § 213 (which deny FLSA protection to certain categories of employees) operate differently than § 203(o) (which *potentially* decreases the amount of *time* for which a concededly covered employee is entitled to payment), but the purpose that they serve differs from that served by § 203(o) as well.  Section 213 exempts specific categories of employees from specific FLSA substantive provisions in order to limit the reach of those provisions even where no collective-bargaining agreement exists.  29 U.S.C. § 213.  Section 203(o), on the other hand, evinces a legislative determination that, under certain circumstances, deference to the terms of a bona fide collective-bargaining agreement may be more in keeping with the FLSA's spirit of protecting the interests of covered workers than would be strict, unqualified adherence to a loose-fitting, imprecise statutory mandate.  This is confirmed

18

by the following statement, which was made by Congressman Christian Herter, who was §

203(o)'s sponsor in the House of Representatives:

> Mr. Chairman, this amendment is an amendment to the definitions under the act. It is offered for the purpose of avoiding another series of incidents which led to the portal-to-portal legislation and led to the overtime-on-overtime legislation.
>
> At the present moment there is a twilight zone in the determinations of what constitutes hours of work which have been spelled out in many collective-bargaining agreements but have not necessarily been defined in the same ways.
>
> Let me be specific. In the bakery industry, for instance, which is 75 percent organized, there are collective-bargaining agreements with various unions in different sections of the country which define exactly what is to constitute a working day and what is not to constitute a working day. In some of those collective-bargaining agreements the time taken to change clothes and to take off clothes at the end of the day is considered a part of the working day. In other collective-bargaining agreements it is not so considered. But, in either case the matter has been carefully threshed out between the employer and the employee and apparently both are completely satisfied with respect to their bargaining agreements.
>
> The difficulty, however, is that suddenly some representative of the Department of Labor may step into one of those industries and say, "You have reached a collective-bargaining agreement which we do not approve. Hence the employer must pay for back years the time which everybody had considered was excluded as a part of the working day." That situation may arise at any moment. This amendment is offered merely to prevent such a situation arising and to give sanctity once again to the collective-bargaining agreements as being a determining factor in finally adjudicating that type of arrangement. It sounds wordy, but in effect it is a very simple amendment.

95 Cong. Rec. H11210 (statement of Rep. Herter). An overly narrow construction of the word

"clothes" in § 203(o) would run counter to the legislative intent to give employers and employees

the ability to secure their own arrangements as to whether employees should be paid for the time

that they spend "changing clothes" and "washing." After all, § 203(o) does not preclude these

activities from being included within an employee's workweek. Instead, it merely permits

employers and employees to decide for themselves whether such activities should be so included.

The word "clothes," as it appears in § 203(o), is not defined. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). This determination, while inconsistent with the Ninth Circuit's decision in *Alvarez*, is consistent with the Eleventh Circuit's decision in *Anderson*. *See Anderson*, 488 F.3d at 955-958. The Court does not believe that Horsehead must surmount the hurdle of showing that the Greens and Greys worn by its employees are "plainly and unmistakably"included within the term "clothes" as used in § 203(o). *Alvarez*, 339 F.3d at 905. Nevertheless, the Court must still determine the meaning of that term in accordance with its most natural meaning. For this purpose, the discussions in both *Alvarez* and *Anderson* are instructive.

In *Alvarez*, the Ninth Circuit construed the word "clothes" narrowly, excluding all garments falling within a category of "personal protective equipment" as defined by a particular OSHA regulation. *Id.* at 905. The language of that regulation provides:

> *Personal Protective Equipment* is specialized clothing or equipment worn by an employee for protection against a hazard. General work clothes (e.g., uniforms, pants, shirts or blouses) not intended to function as protection against a hazard are not considered to be personal protective equipment.

29 C.F.R. § 1910.1030(b). Acknowledging that the OSHA definition had been promulgated in a "different context," the Ninth Circuit asserted that it nevertheless provided a "useful analytic distinction" between general clothing and protective clothing. *Alvarez*, 339 F.3d at 905.

It is noteworthy that the regulation defines the term "personal protective equipment" broadly enough to include both specialized *clothing* and *equipment*, thereby implying that some (but not all) personal protective equipment can be fairly characterized as "clothing." Section

203(o), of course, simply uses the term "clothes," which would seem to indicate that it includes all *clothing*, including that which also constitutes personal protective equipment. Despite this overlap, not all pieces of personal protective equipment are "clothes." In *Anderson*, the Eleventh Circuit acknowledged that there may be a difference between *general* protective clothing, like the garments at issue in that case, and *specialized* protective clothing, such as plastic shields, steel mesh gloves or spacesuits. *Anderson*, 488 F.3d at 955-956. Not every form of protective equipment necessarily falls within the meaning of the word "clothes" simply because it covers, or is somehow in close proximity with, an employee's body. Be that as it may, it does not follow that *no* piece of protective equipment can constitute "clothing." The categories of "clothes" and "personal protective equipment" are neither mutually inclusive nor mutually exclusive. It would be inconsistent with the "ordinary, common, contemporary meaning" of the word "clothes" to hold that no job-specific shirt could constitute "clothing" merely because it happens to contain a protective ingredient. Indeed, the Fifth Circuit once opined that it would be "nonsensical" to define the word "clothes" so narrowly as to exclude all protective gear. *Begil v. Ethicon, Inc.*, 269 F.3d 477, 480, n. 3 (5th Cir. 2001). Like the Fifth and Eleventh Circuits, this Court is unpersuaded by the argument that "protective clothing" is categorically beyond the scope of the word "clothes" appearing in § 203(o).[12]

_____

[12]In *Spoerle v. Kraft Foods Global, Inc.*, 527 F.Supp.2d 860, 868 (W.D.Wis. 2007), the United States District Court for the Western District of Wisconsin opined that Congress must have intended the word "clothes" to include only garments without protective ingredients because an alternative reading would "allow employee safety and sanitation to become a bargaining chip in contract negotiations." This line of reasoning does not square with the real issue. The issue is not whether employees should don protective gear, but rather whether they should be compensated for the time that they spend doing so. While it may be unreasonable to assume that Congress would permit safety *itself* to be subject to the collective-bargaining process, the same cannot be said of *compensation* for the time taken by employees to don and doff protective clothing. While protective clothing may serve a purpose different from that of a basic uniform, it may not take any longer for an employee to don or doff protective clothing than it would for him or her to don or doff a uniform. Since compensation for the time spent donning and doffing a uniform is subject to the collective-bargaining process, there is no reason to assume that Congress could not have

21

In support of their argument that the Greens worn by employees of Horsehead's lead and cadmium program do not constitute "clothes" for purposes of § 203(o), the Plaintiffs have presented declarations by Lucci, Powell and Hall. Doc. No. 49-7. Each declaration states that the Greens "are heat and flame retardant and are specially manufactured to protect workers from toxic lead and cadmium dusts." *Id.* at ¶ 6. As noted earlier, however, the mere fact that the Greens contain protective ingredients does not mean that they are not "clothes." In their stipulation, the parties refer to both the Greens and the Greys as "protective clothing." Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 5. While they agree that their use of this term "shall have no legal significance," it is striking that the noun which follows the adjective directly corresponds with the root word contained in § 203(o). The Court has already determined that the adjective "protective" does not deprive "clothes" of their fundamental character. In support of its position, Horsehead has submitted photographs of both the Greens and the Greys worn by its employees. Doc. No. 55 at 6-12. The Court has examined these photographs, which certainly appear to depict "clothes." The photographs are accompanied by an affidavit signed by Daryl Fox ("Fox"), who is Horsehead's Vice-President of Human Resources. *Id.* at 4. In that affidavit, Fox stated that these photographs fairly and accurately represent the Greens and Greys worn by Horsehead employees. *Id.* at 4, ¶¶ 2-3. Fox also asserted that while the Greens are laundered by Horsehead, the Greys can be taken home and laundered by the employees themselves. *Id.*

The Plaintiffs do not attempt to establish that either the Greens or the Greys constitute *specialized* protective clothing rather than *general* protective clothing. Instead, they appear to

intended for the time spent donning and doffing protective clothing to likewise be subject to that process.

rely solely on the premise that all *protective* gear is outside of the category of "clothes" referenced in § 203(o) simply because it is "protective." Doc. No. 51 at 6-15. This premise, however, is inconsistent with both the plain language of the statutory provision and the legislative intent reflected therein. Moreover, the Greens and Greys are worn instead of, rather than on top of, the employees' regular clothes. The parties have stipulated that the employees' act of donning is preceded by their act of disrobing. Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶¶ 6-7. It is difficult to fathom a sequence of events more clearly approximating the meaning of the phrase "changing clothes." *Anderson*, 488 F.3d at 956 ("In addition, aside from their contention that § 203(o) does not apply to any protective clothing, the named CFJV plaintiffs do not attempt to draw any finer distinctions. Thus, we conclude that the garments the named CFJV plaintiffs were required to don/doff to perform their job duties fit squarely within the commonly understood definition of 'clothes' as that term is used in § 203(o).").

As a general matter, courts have described the question of whether an activity should be excluded from the hours worked by an employee under the FLSA as a mixed question of law and fact. *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004). While they have described the nature of the employee's duties as a question of fact, they have made it clear that the FLSA's application to those duties is a pure question of law. *Lemmon v. City of San Leandro*, 538 F.Supp.2d 1200, 1203 (N.D.Cal. 2007). In this case, the relevant question is whether the employees' act of donning and doffing their Greens and Greys constitutes "changing clothes" within the meaning of § 203(o). As far as the Court can tell, there is no dispute whatsoever about the *nature* of the protective garments. The disputed issue is whether such garments are "clothes" for purposes of the statute, which is a question of law for this Court.

Since the Plaintiffs do not take issue with Horsehead's representations concerning the nature of the Greens and Greys, and given that their argument is based solely on the unpersuasive proposition that protective *clothes* are not "clothes," the Court holds that the Greens and Greys are "clothes" for purposes of § 203(o), and that Horsehead is entitled to summary judgment as to this issue. This determination, of course, does not mean that the time spent by Horsehead's employees donning and doffing such clothes are not compensable under the FLSA. Instead, it merely leaves the issue of compensation subject to the collective-bargaining process, which is exactly what Congress intended when it enacted § 203(o).[13]

### B. "Custom or Practice" Under § 203(o)

Section 203(o) is an affirmative defense. *Kassa*, 487 F.Supp.2d at 1071 (referring to a party's "§ 203(o) defense"). Consequently, the burden is on Horsehead to establish that it is entitled to such a defense. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974). Because Horsehead moves for summary judgment as to an issue on which it bears the burden of proof, its burden at the summary judgment stage is stringent. *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). To prevail, Horsehead must establish "beyond peradventure" all of the elements necessary to its defense. *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In other words, it must make an affirmative showing of the absence of a genuine issue of material fact. *Wasserman v. Bressman*, 327 F.3d 229, 237-238 (3d

---

[13]The Court's construction of the phrase "changing clothes" is consistent with that adopted by the Department of Labor ("DOL") in opinion letters dated June 6, 2002, and May 14, 2007. Doc. No. 48 at 32-37. The Court acknowledges that the DOL took a contrary position in opinion letters dated December 3, 1997, and January 15, 2001. Doc. No. 49-9. Nevertheless, inconsistency alone does not deprive an agency's policy statements of all persuasive force. *Federal Express Corp. v. Holowecki*, 128 S.Ct. 1147, 1156-1157 (2008). Moreover, the Court believes the DOL's current position concerning the construction of the phrase "changing clothes" (which considers protective *clothes* to be *clothes*) to be consistent with the most natural reading of § 203(o).

Cir. 2003); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11ᵗʰ Cir. 1991).
If Horsehead can make such an affirmative showing, it is entitled to summary judgment unless
the Plaintiffs can come forward with probative evidence demonstrating the existence of a triable
issue of fact. *Wasserman*, 327 F.3d at 238. With that in mind, the Court now turns to the second
part of Horsehead's § 203(o) defense (i.e., the question of whether the contested donning and
doffing time "was excluded from measured working time during the week[s] involved by the
express terms of or by custom or practice under a bona fide collective-bargaining agreement
applicable to the particular employee[s]").

The parties have stipulated that their collective-bargaining agreement does not address the
question of whether Horsehead employees should be paid for the contested time. Joint
Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 11. For this reason, Horsehead cannot
prevail on the ground that such time was not compensable due to "the express terms of . . . a
bona fide collective-bargaining agreement . . ." 29 U.S.C. § 203(o). The dispositive question is
whether the contested time was excluded from the Plaintiffs' work hours "by custom or practice"
under the agreement. *Id.*

The stipulation states that Horsehead has a "practice" of not paying the Plaintiffs for their
donning and doffing time. Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 9. This
statement, of course, conveys nothing more than the fact that Horsehead *has not* been paying the
Plaintiffs for such time, which is the very reason why the Plaintiffs opted to commence this
action in the first place. The more complicated question is whether this "practice" exists "under"
the collective-bargaining agreement between Horsehead and Local 8183. 29 U.S.C. § 203(o).

The United States Court of Appeals for the Third Circuit construed the applicable

statutory language in *Turner v. City of Philadelphia*, 262 F.3d 222 (3d Cir. 2001). In *Turner*, the Third Circuit rejected the notion that a "custom or practice" of nonpayment for donning and doffing time cannot be "under a bona fide collective-bargaining agreement" unless the issue of compensability for such time has been formally raised in collective-bargaining negotiations and subsequently abandoned by the negotiators. *Turner*, 262 F.3d at 226. In other words, the phrase "custom or practice under a bona fide collective-bargaining agreement" was *not* construed to mean "custom or practice established through formal collective-bargaining negotiations." *Id.* Instead, the phrase was interpreted to restate (and codify) "the well-established principle of labor law that a particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence." *Id.* In *Turner*, the defendant-employers (i.e., the City of Philadelphia and the City Prisons Commissioner) had obtained summary judgment in the United States District Court for the Eastern District of Pennsylvania upon demonstrating that: (1) the employer had not paid its employees for their donning and doffing time for a period exceeding thirty years; (2) every collective-bargaining agreement between the employer and the employees had been silent as to the issue of compensation for donning and doffing time; (3) compensation for the employees' donning and doffing time had been *proposed* by the president of the employees' union; (4) the union had not made a *request* for such compensation during formal collective-bargaining negotiations; (5) the union had requested and received a uniform maintenance allowance and overtime compensation for the one hour per week that the employees spent at mandatory pre-shift roll calls; and (6) the union had never filed a grievance or demanded arbitration based on the employees' lack of compensation for donning and doffing time. *Id.* at 225. The Third Circuit affirmed the District Court's decision to grant summary judgment in

favor of the defendants.  *Id.* at 225-227.

Whether a collective-bargaining agreement implicitly contains a term is a question of fact.  *Kassa*, 487 F.Supp.2d at 1071.  The critical question is whether nonpayment for Horsehead's employees' donning and doffing time became an implied term of the collective-bargaining agreement between Horsehead and Local 8183 "through a prolonged period of acquiescence."  *Turner*, 262 F.3d at 226.  In determining whether such acquiescence was present, the Court can consider whether the issue of payment for the contested time had been discussed on prior occasions.  *Kassa*, 487 F.Supp.2d at 1071 ("Indeed, to the extent that the union members never raised the issue even among themselves, this may suggest that they did *not* knowingly acquiesce in Kerry's policy of non-payment for clothes-changing time.")(emphasis in original).

One month after filing their first stipulation, the parties filed a second one.  The parties agree that the production and maintenance employees working at Horsehead's Monaca facility have been represented by Local 8183 since the 1970's.  Second Joint Stipulation of Undisputed Facts (Doc. No. 44) at ¶ 1.  Neither Horsehead nor Local 8183 raised the issue of compensation for the contested time during collective-bargaining negotiations prior to November 2007.  *Id.* at ¶ 2.  Nevertheless, the Supreme Court's decision in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), apparently led Local 8183 to believe that the FLSA entitled Horsehead employees to be compensated for the contested time.  On April 26, 2006, Local 8183 filed a grievance to that effect.  *Id.* at ¶ 3.  Horsehead denied the grievance two days later.  *Id.* at ¶ 4.  Local 8183 moved the grievance to the Third Step, and a meeting between the parties was held on May 18, 2006.  *Id.* at ¶ 5.  Horsehead denied the grievance again on May 29, 2006, prompting Local 8183 to move the grievance to the Fourth Step one day later.  *Id.* at ¶ 6.  No Fourth Step grievance

meeting was held. *Id.* at ¶ 7. The Plaintiffs commenced this action on October 7, 2006. Since

that time, Horsehead and Local 8183 have negotiated a new collective-bargaining agreement. *Id.*

at ¶ 9. During negotiations held on November 7, 2007, Horsehead made the following proposal:

> The Union and the Company agree that the Company shall provide a payment equivalent to one (1) hour of pay per week at the employees' regular rate to employees who are a) covered under the OSHA Lead/Cadmium program and b) who are not, under current practice, provided a paid wash-up period before the end of their shift, to compensate such employees for all preliminary and postliminary activities and activities previously excluded by 29 U.S.C. 203(o), including, but not limited to, walking, waiting, and showering time, as well as all time spent donning and doffing any work clothing, protective clothing, and protective gear during any single work week.
>
> The foregoing agreement is intended to satisfy all state and federal law pay obligations relating to these preliminary and postliminary activities. The parties agree that 29 U.S.C. 203(o) applies to this provision, and that any time spent in engaging in the foregoing activities is properly excluded from measured working time during the work week, and will not be treated as working time for purposes of determining entitlement to overtime or premium time under this Agreement.
>
> The parties agree that all matters related to this provision are subject to the grievance/arbitration procedures of the Agreement, and that the payment made hereunder is sufficient to cover all activities described herein.

Doc. No. 44-6 at 3. Local 8183 rejected this proposal. Second Joint Stipulation of Undisputed

Facts (Doc. No. 44) at ¶ 10.

Under these circumstances, the Court cannot conclude as a matter of law that the

Plaintiffs (through Local 8183) voluntarily acquiesced in nonpayment for the contested time.

This case differs from *Turner* in two meaningful ways. First of all, unlike in *Turner*, there is no

evidence in this case that Local 8183 had informally considered and abandoned efforts to seek

compensation for Horsehead's employees' donning and doffing time. *Turner*, 262 F.3d at 225.

Second, the Plaintiffs do not appear to have received any particular benefit in place of such

compensation. In *Turner*, it was clear that the employees had received a uniform maintenance

allowance and overtime compensation for the one hour per week that they had spent at mandatory pre-shift roll calls. *Id.* The Plaintiffs in this case were apparently unaware of their entitlement to compensation for the contested time until the Supreme Court issued its decision in *Alvarez*. Thus, their reason for not seeking such compensation may have been due to their lack of awareness about their entitlement to it. When viewed in the light most favorable to the Plaintiffs, this situation does not reflect the voluntary give-and-take that normally accompanies the collective-bargaining process. It was this form of bargaining prerogative, and not silence based on ignorance, that § 203(o) was designed to vindicate.

The Court's reasoning as to this issue mirrors that of the United States District Court for the District of Minnesota in *Kassa v. Kerry, Inc.*, 487 F.Supp.2d 1063 (D.Minn. 2007). In *Kassa*, the District Court declared:

> The Court is unprepared to find that Kerry's six-year history of nonpayment for clothes-changing time, together with evidence that the union never complained about such nonpayment, is sufficient to establish, as a matter of law, a "custom or practice" of nonpayment under § 203(o). Indeed, to the extent that the union members never raised the issue even among themselves, this may suggest that they did *not* knowingly acquiesce in Kerry's policy of nonpayment for clothes-changing time. If an employer's nonpayment for clothes-changing time were sufficient, by itself, to establish a "custom or practice" under § 203(o), then § 203(o) would essentially be an unlimited FLSA exemption applicable to every unionized employer that did not pay for clothes-changing time. The Court does not believe that § 203(o) is so sweeping.

*Kassa*, 487 F.Supp.2d at 1071. Admittedly, this Court does not view § 203(o) as an "exemption" that must be strictly construed against Horsehead. Nonetheless, the principle discussed by the District Court in *Kassa* applies with equal force in this case. An employer may negotiate away its obligation to pay for donning, doffing and washing time by participating in the collective-

bargaining process, but it cannot evade the requirements of the FLSA simply by establishing a history of ignoring them. If it were otherwise, the § 203(o) inquiry would be wholly circular. The Court will not attribute such an intent to a Congress which apparently sought only to provide a zone of bargaining autonomy for employers and employees who appreciate the nature of their respective obligations and entitlements and proceed to negotiate in accordance therewith. Horsehead's Motion for Summary Judgment must be denied insofar as it is based on the theory that the Plaintiffs' alleged acquiescence in nonpayment for the contested time rendered such nonpayment an implicit term in the collective-bargaining agreement between Horsehead and Local 8183.

### C. The Application of the Portal Act

Horsehead argues that the Plaintiffs' claims for time spent traveling to and from their work stations (after donning and before doffing) are barred by the Portal Act. Doc. No. 46 at 14-15; Doc. No. 57 at 21-22. The Plaintiffs contend that their traveling time is compensable even if their donning, doffing and showering time is excluded from their workweek pursuant to § 203(o). Doc. No. 51 at 18-22. In order to evaluate this issue, the Court turns to the applicable Supreme Court precedents.

In *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956), the Supreme Court held that "activities performed either before or after [an employee's] regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." Specifically, the Supreme Court held that workers in a battery plant were entitled to compensation for the time

that they spent changing clothes at the beginning of their shifts and showering at the end of their shifts, since their use of caustic and toxic chemicals required them to change clothes and shower in facilities which Tennessee law required their employer to provide. *Steiner*, 350 U.S. at 248-256. Under this standard, the donning, doffing and showering activities of Horsehead's employees are *themselves* "principal" activities for purposes of the Portal Act if they are "integral and indispensable" to the "principal" activities for which they are employed. *DeAsencio*, 500 F.3d at 371 ("Activity must be 'work' to qualify for coverage under the FLSA, and that 'work,' if preliminary or postliminary, will still be compensable under the Portal-to-Portal Act if it is 'integral and indispensable' to the principal activity. Under *Alvarez*, such activities are, *in themselves*, principal activities.")(emphasis in original).

The plain language of the Portal Act excludes "preliminary" and "postliminary" activities from an employee's compensable workweek only where such activities "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he [or she] ceases, [his or her] principal activity or activities." 29 U.S.C. § 254(a). Consequently, activities occurring subsequent to an employee's first principal activity and prior to his or her last principal activity on a particular workday remain compensable under the FLSA even if they would be considered "preliminary" or "postliminary" activities if performed outside of his or her "continuous workday." This is true even of the "walking, riding, or traveling" activities described in § 254(a)(1). In *Alvarez*, the Supreme Court held that the phrase "principal activity or activities" in § 254(a)(1) has the same meaning as it has in § 254(a)(2), thereby precluding the exclusion of "walking, riding, or traveling" time occurring during the course of (rather than before or after) an employee's continuous workday from

compensable time under the Portal Act. *Alvarez*, 546 U.S. at 33-34. Accordingly, any time spent

by an employee "walking, riding, or traveling" *after* his or her first principal activity and *before*

his or her last principal activity remains compensable under the Portal Act, and is not rendered

noncompensable by the language of § 254(a)(1).

In this case, there appears to be no dispute that the donning, doffing and showering

activities of Horsehead's employees are "an integral and indispensable part of the principal

activities" for which they are employed. *Steiner*, 350 U.S. at 256. Horsehead does not contend

that its employees could safely perform their daily tasks without wearing the Greens or Greys,

and it is clear that Horsehead requires its lead and cadmium program employees to shower before

leaving the Monaca facility. Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶¶ 6-7.

Horsehead's argument that its employees' post-donning and pre-doffing traveling time is

rendered noncompensable by the Portal Act rests on the premise that the application of § 203(o)

in this case changes the meaning of the phrase "principal activity or activities" appearing in the

Portal Act. In other words, Horsehead argues that its employees' post-donning and pre-doffing

traveling activities occur before and after the continuous workday, and are excluded from the

employees' compensable work time under § 254(a)(1), *because* the application of § 203(o)

renders such activities "preliminary" and "postliminary" for purposes of § 254(a)(2). Doc. No.

46 at 14-15. Thus, Horsehead appears to concede that the donning, doffing and washing

activities engaged in by its employees would otherwise be principal activities under the Portal

Act as construed in *Steiner*, contending that such activities are *not* principal activities in this case

*only* because they are excluded by § 203(o). The Plaintiffs, on the other hand, argue that their

donning, doffing and washing activities remain principal activities under the Portal Act even if

they are excluded by § 203(o), and that their traveling time is compensable as a part of the continuous workday in any event. Doc. No. 51 at 18-22. According to the Plaintiffs' reading of the FLSA and the Portal Act, § 203(o) does not change the meaning of the phrase "principal activity or activities" appearing in § 254(a).

At the outset, it is worth repeating that Horsehead has not established the applicability of § 203(o) to this case. Resolution of that issue must await a factual determination as to whether Horsehead's employees, through Local 8183, actually acquiesced in Horsehead's "practice" of nonpayment to a sufficient degree to render it a part of their collective-bargaining agreement. Nevertheless, the Court's construction of the words "changing clothes" leaves compensability for the donning and doffing time at issue in this case subject to the collective-bargaining process, thereby allowing Horsehead to proceed with its § 203(o) defense. At this stage, the Court cannot exclude the possibility that Horsehead will be able to establish that it is not liable for not compensating its employees for their donning, doffing and washing time. Therefore, for purposes of this analysis, the Court will assume *arguendo* that § 203(o) excludes Horsehead's employees' donning, doffing and washing time from their compensable workweek, and that the only time at issue is the employees' post-donning and pre-doffing traveling time.

In *Alvarez*, the Supreme Court held that: (1) any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity" under § 254(a); and (2) any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity (i.e., during a "continuous workday") is excluded from the scope of § 254(a) and is, therefore, covered by the FLSA's substantive provisions. *Alvarez*, 546 U.S. at 37. Consequently, the time that Horsehead's employees spend (1) traveling

from the locker room to their work stations after donning and (2) traveling from their work stations to the locker room before doffing is compensable if donning and doffing activities are "principal" activities within the meaning of § 254(a). As noted earlier, the Court is convinced that the donning and doffing activities engaged in by Horsehead's employees are "integral and indispensable" to their principal activities under *Steiner*. Horsehead does not appear to argue otherwise. The only question is whether such "integral and indispensable" activities cease to be "principal" activities under § 254(a) when the terms of a bona fide collective-bargaining agreement exclude them pursuant to § 203(o).

The Supreme Court made the following observations about §§ 203(o) and 254(a) in *Steiner*:

> In 1949, Section 3(o) was added to the Act. Both sides apparently take comfort from it, but the position of the Government is strengthened by it since its clear implication is that clothes changing and washing, *which are otherwise a part of the principal activity*, may be expressly excluded from coverage by agreement.

*Steiner*, 350 U.S. at 254-255 (emphasis added). The italicized portion of this passage could be read in either of two ways. Horsehead believes that an *otherwise* "principal" activity is rendered a "preliminary" or "postliminary" activity when it is excluded by § 203(o), while the Plaintiffs believe that § 203(o) does not change the meaning of the words "principal," "preliminary" and "postliminary" as used in the Portal Act. Under Horsehead's preferred construction, its employees' post-donning and pre-doffing traveling time does not occur during the "continuous workday," since preliminary and postliminary activities do not start or end the workday. If the Plaintiffs are correct, such traveling time *does* occur within the "continuous workday," since the potential exclusion of donning and doffing time from the *compensable* workday under § 203(o)

does not convert donning and doffing activities from "principal" activities to "preliminary" and "postliminary" activities under § 254(a).

The regulations promulgated by the Department of Labor ("DOL") do not shed much light on the precise question presented in this case. 29 C.F.R. §§ 785.26, 790.7-790.8. It is clear that, in the absence of a § 203(o) exclusion, the donning and doffing activities at issue in this case would be considered "principal" activities. 29 C.F.R. § 790.8(c)("If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity.")(footnotes omitted). The regulations are silent, however, as to the interaction between § 203(o) and the Portal Act.

In support of its position, Horsehead relies on a DOL opinion letter dated May 14, 2007, in which the DOL stated as follows:

> Section 3(o) of the FLSA excludes "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(o). In promulgating this provision Congress plainly excluded activities covered by section 3(o) from time that would otherwise be "[h]ours worked." 29 U.S.C. § 203(o). Accordingly, activities covered by section 3(o) cannot be considered principal activities and do not start the workday. Walking time after a 3(o) activity is therefore not compensable unless it is preceded by a principal activity.

Doc. No. 48 at 36. Speaking about the FLSA in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), the Supreme Court explained:

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and

litigants may properly resort for guidance. The weight of such a judgment in a
particular case will depend upon the thoroughness evident in its consideration, the
validity of its reasoning, its consistency with earlier and later pronouncements,
and all those factors which give it power to persuade, if lacking power to control.

*Skidmore*, 323 U.S. at 140.[14] As the Plaintiffs point out, the DOL has not been consistent in

interpreting § 203(o). In opinion letters dated December 3, 1997, and January 15, 2001, the DOL

opined that the phrase "changing clothes" in § 203(o) did not include the donning and doffing of

protective safety equipment. Doc. No. 49-9. The DOL took a contrary position in subsequent

opinion letters dated June 6, 2002, and May 14, 2007. Doc. No. 48 at 32-37. Such inconsistency

does not directly relate to the question of whether § 203(o) alters the construction of the words

"principal," "preliminary" and "postliminary" appearing in § 254(a). Nevertheless, the May 14,

2007, opinion letter simply states, in a conclusory manner, that "activities covered by section 3(o)

cannot be considered principle activities" because Congress excluded such activities from time

that would otherwise count as "[h]ours worked." Doc. No. 48 at 36. The Court finds this

assertion to be unpersuasive, since the opinion letter provides no basis for concluding that a

"principal activity" somehow becomes "preliminary" or "postliminary" merely because

employees need not be compensated for the time taken to perform it.

The DOL's current position, unlike its former position, is that the donning and doffing of

protective clothing can constitute "changing clothes" for purposes of § 203(o). Doc. No. 48 at

32-37. The Court does not take issue with this position, since it is consistent with the plain

language of the statute, which speaks of "clothes" in a general sense without distinguishing

---

[14]The Supreme Court's use of the word "Administrator" is a reference to the Administrator of the Wage and Hour Division of the Department of Labor. 29 U.S.C. § 259(b)(1).

between protective clothing and other forms of clothing. Nevertheless, the plain language of §

203(o) must also control the question of whether "walking, riding, or traveling" time is likewise

excluded from "the hours for which an employee is employed." 29 U.S.C. § 203(o). Section

203(o) permits employers and employees to exclude, through the collective-bargaining process,

"any time spent in changing clothes or washing at the *beginning or end of each workday* . . ." *Id.*

(emphasis added). The plain language of § 203(o) contemplates that the excluded time is

considered to be a part of the *workday*. It says nothing about "walking, riding, or traveling" time.

The Portal Act, by its own force, excludes "walking, riding, or traveling" time, but *only* where

such time does not fall within the continuous workday. 29 U.S.C. § 254(a)(1). Where such time

falls between two principal activities, it is *not* excluded under the Portal Act. *Alvarez*, 546 U.S.

at 37 ("Moreover, during a continuous workday, any walking time that occurs after the beginning

of the employee's first principal activity and before the end of the employee's last principal

activity is excluded from the scope of that provision, and as a result is covered by the FLSA.").

Horsehead does not argue that the donning and doffing activities engaged in by its

employees are not an "integral and indispensable part of the principal activities" for which they

are employed. *Steiner*, 350 U.S. at 256. *That* is what determines whether an activity is a

"principal activity" (as opposed to a "preliminary" or "postliminary" activity) under the Portal

Act. While § 203(o) permits employers and employees to exclude "any time spent in changing

clothes or washing at the beginning or end of each workday" from "the hours for which an

employee is employed," it does not make donning and doffing activities any less "integral and

indispensable" to the employees' performance of their daily tasks. 29 U.S.C. § 203(o). In other

words, the *character* of donning and doffing activities is not dependent upon whether such

activities are excluded pursuant to a collective-bargaining agreement. Thus, even if Horsehead were entitled to summary judgment with respect to the "changing clothes or washing" time (which it is not), summary judgment would still have to be denied with respect to the Plaintiffs' post-donning and pre-doffing travel time.[15] *Conerly v. Marshall Durbin Co.*, 2007 WL 3326836, at *7, 2007 U.S. Dist. LEXIS 85994, at *18-20 (S.D.Miss. November 6, 2007). The Court is not convinced that § 203(o) changes the "principal" nature of donning and doffing activities, or that "principal" activities somehow become "preliminary" or "postliminary" under the Portal Act simply because they are rendered noncompensable by a collective-bargaining agreement in accordance with § 203(o). A determination to the contrary would expand § 203(o)'s exclusion beyond donning, doffing and washing time to include post-donning and pre-doffing travel time, which is not mentioned therein.[16] It is also noteworthy that the voluntary nature of a collective-bargaining agreement would not cure any legal defect in Horsehead's failure to compensate its employees for their post-donning and pre-doffing travel time, since rights provided by the FLSA cannot be waived by an agreement between an employer and its employees. *Baker v. Barnard Construction Co., Inc.*, 146 F.3d 1214, 1216-1217 (10th Cir. 1998). For these reasons, the Court is convinced that activities rendered noncompensable under § 203(o) by a collective-bargaining agreement can nevertheless mark the *beginning* and the *end* of a continuous workday for

---

[15]The Court notes that the Plaintiffs are not moving for summary judgment, and that their arguments are raised solely for the purpose of defeating Horsehead's Motion for Summary Judgment. Doc. No. 51 at 18-22.

[16]The Court does not construe the word "otherwise," as used in *Steiner*, to mean that "principal" activities are rendered "preliminary" or "postliminary" activities under the Portal Act by the application of § 203(o). *Steiner v. Mitchell*, 350 U.S. 247, 254-255 (1956)("Both sides apparently take comfort from it, but the position of the Government is strengthened by it since its clear implication is that clothes changing and washing, which are *otherwise* a part of the principal activity, may be expressly excluded from coverage by agreement.")(emphasis added). Instead, the Court believes that, under the Supreme Court's reasoning, "principal" activities excluded under § 203(o) do not lose their fundamental character, and that an "agreement" can do nothing more than make such activities noncompensable.

purposes of the Portal Act, and that § 203(o) should be read to exclude only "time spent in changing clothes or washing."[17]   29 U.S.C. § 203(o).

In their declarations, Lucci, Powell and Hall all state that the required travel time between the locker room and a worker's particular worksite can range between five and fifteen minutes (both before and after each daily shift).  Doc. No. 49-7 at ¶ 7.  Horsehead does not argue that this time should be excluded on the ground that it is *de minimis*, and the Court does not view such time as *de minimis*.  *Spoerle v. Kraft Foods Global, Inc.*, 527 F.Supp.2d 860, 868-869 (W.D.Wis. 2007).  While Horsehead remains free to dispute the Plaintiffs' factual assertions at a later stage, it provides no basis upon which the Court can grant its Motion for Summary Judgment with respect to the Plaintiffs' post-donning and pre-doffing travel time.

### D.  Horsehead's Reliance on DOL Opinion Letters

Horsehead contends that it cannot be held liable under the FLSA irrespective of the merits of the Plaintiffs' claims because of its reliance on DOL opinion letters supporting its position.  In support of this argument, Horsehead relies on § 10 of the Portal Act, which is codified at 29 U.S.C. § 259.  That provision provides:

### § 259.  Reliance on future administrative rulings

(a) In any action or proceeding based on any act or omission on or after the date of the enactment of this Act [May 14, 1947], no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay

---

[17]This does not mean that donning, doffing and washing activities will always mark the beginning or the end of a continuous workday.  Where such activities are truly "preliminary" or "postliminary" under the Portal Act, they will not begin or end the continuous workday.  Where, as here, such activities constitute "principal" activities, they will begin or end the continuous workday irrespective of whether they are rendered noncompensable by a collective-bargaining agreement pursuant to § 203(o).  A contrary conclusion would result in a situation in which employees could be forced to forgo compensation for extensive post-donning and pre-doffing travel time, even where donning and doffing activities are "integral and indispensable" to their primary duties.  Such a result would expand the scope of § 203(o) far beyond its plain language.

minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201 *et seq.*], the Walsh-Healey Act [41 U.S.C. § 35 *et seq.*], or the Bacon-Davis Act [40 U.S.C. § 276a *et seq.*], if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.  Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

(b) The agency referred to in subsection (a) shall be--

> (1) in the case of the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201 *et seq.*]–the Administrator of the Wage and Hour Division of the Department of Labor [Secretary of Labor];

\*\*\*

29 U.S.C. § 259.  As the statutory language indicates, a defendant such as Horsehead must "plead" and "prove" each element of a § 259 defense.  This burden of proof is a "heavy one," since a defense under § 259 would act as a bar to this proceeding, thereby absolving Horsehead of liability and penalties for any past FLSA violations.  *Luna-Guerrero v. North Carolina Grower's Association*, 370 F.Supp.2d 386, 391 (E.D.N.C. 2005).  In order to prevail, Horsehead must establish that: (1) its policies regarding compensation (or lack thereof) for the donning, doffing and washing time of its employees were promulgated or continued *in reliance on* a "written administrative regulation, order, ruling, approval, or interpretation" of the Administrator of the Wage and Hour Division; (2) its policies were *in conformity with* such "written administrative regulation, order, ruling, approval, or interpretation" of the Administrator; and (3) it acted in *good faith.  Hultgren v. County of Lancaster*, 913 F.2d 498, 507 (8th Cir. 1990).  For purposes of this inquiry, an opinion letter written by the Administrator constitutes a "ruling"

within the meaning of § 259(a). 29 C.F.R. § 790.17(d).

In order to satisfy the first element of its § 259 defense, Horsehead must establish not only the *existence* of a written "ruling," but also that it "actually relied upon" such ruling. 29 C.F.R. § 790.16(a). It is not sufficient for Horsehead to simply show that it relied on its own incorrect interpretation of a "vague and general administrative guideline." *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 927 (11ᵗʰ Cir. 1987). The "rulings" which form the basis of Horsehead's defense consist of opinion letters dated June 6, 2002, and May 14, 2007. The June 6, 2002, letter (the "McCutchen letter") was authored by Tammy D. McCutchen, who was the Administrator at that time. Doc. No. 48 at 32-34. In the McCutchen letter, the DOL opined that the words "changing clothes" in § 203(o) included the donning and doffing of protective safety equipment typically worn by employees in the meat packing industry, and that the word "washing" referred only to the washing of a person (and not to the washing of equipment). *Id.* After the Ninth Circuit issued its decision in *Alvarez* (which expressly rejected the position taken by the DOL in the McCutchen letter), an undisclosed party inquired as to whether the McCutchen letter could still be relied upon in jurisdictions outside of the Ninth Circuit. In an opinion letter dated May 14, 2007 (the "DeCamp letter"), Administrator Paul DeCamp answered that question in the affirmative. *Id.* at 36-37. In the DeCamp letter, the DOL adhered to the position which it had taken in the McCutchen letter despite the Ninth Circuit's determination that § 203(o) could not be used to exclude the time spent by employees to don and doff protective clothing from such employees' "[h]ours worked." *Id.* Nevertheless, the DeCamp letter specifically declined to take a position as to what constituted a "custom or practice under a bona fide collective-bargaining agreement." *Id.* at 36 ("As in our previous letter, we take no position on what constitutes a

custom or practice for purposes of excluding time under section 3(o), or on whether there is such a custom or practice by any employees in your industry.").

Horsehead cannot satisfy the first element of its § 259 defense (at least at this stage) for two reasons. First of all, the parties agree that Horsehead's "practice" of not compensating its employees for their donning, doffing and washing time predates both the McCutchen letter and the DeCamp letter. Since the policy in question predated the written "rulings" upon which Horsehead relies, it would be reasonable for a finder of fact to infer that no actual reliance of such rulings occurred in this case. Second, both the McCutchen letter and the DeCamp letter contradicted prior DOL opinion letters dated December 3, 1997 (the "Fraser letter"), and January 15, 2001 (the "Kerr letter"), which were authored by Acting Administrator John R. Fraser and Administrator T. Michael Kerr, respectively. Doc. No. 49-9. In both the Fraser letter and the Kerr letter, the DOL took the position that the phrase "changing clothes" appearing in § 203(o) did not encompass the donning and doffing of protective safety equipment (including protective clothing). *Id.* For much of its history, Horsehead's "practice" of nonpayment was contrary to, rather than in accordance with, the applicable DOL "rulings." Given this chronology of events, there is considerable doubt as to whether the DOL's "rulings" truly had an impact on Horsehead's policies. Since Horsehead bears the burden of proof as to this issue, it cannot be granted summary judgment.

The Plaintiffs argue that, even if Horsehead could show that it actually relied on the McCutchen and DeCamp letters, its actions were not *in conformity with* such letters. Doc. No. 51 at 28-29. DOL rulings, of course, can be used to establish a § 259 defense only if they provide guidance that is context-specific (i.e., guidance that is specifically related to the actions,

policies or practices at issue).  *Mascol v. E&L Transportation, Inc.*, 387 F.Supp.2d 87, 100 (E.D.N.Y. 2005).  The Plaintiffs base their argument on the fact that the McCutchen and DeCamp letters dealt with the meat packing industry, which is different than the industry presently at issue.  Doc. No. 51 at 28-29.  The Court is convinced that Horsehead cannot satisfy the conformity element, but for a different reason than that posited by the Plaintiffs.  As explained earlier, the Court agrees with Horsehead's construction of the words "changing clothes" appearing in § 203(o).  Where Horsehead's Motion for Summary Judgment fails is on the question of whether the Plaintiffs' donning, doffing and washing time "was excluded from measured working time during the week[s] involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement" applicable to the Plaintiffs.  29 U.S.C. § 203(o).  Neither the McCutchen letter nor the DeCamp letter speaks to this issue, and the DeCamp letter expressly disavows any opinion on such issue.  Doc. No. 48 at 36.  The parties have stipulated that the collective-bargaining agreement between Horsehead and Local 8183 does not address the question of whether Horsehead's employees should be paid for their donning, doffing and washing time.  Joint Stipulation of Undisputed Facts (Doc. No. 42-2) at ¶ 11.  Thus, it was obvious to Horsehead that such time was not excluded by the "express terms of" a collective-bargaining agreement.  Since the opinion letters relied upon by Horsehead did not even address the dispositive issue (i.e., whether the contested time was excluded "by custom or practice under a bona fide collective bargaining agreement"), Horsehead's argument that its actions were "in conformity with" those opinion letters squarely misses the mark.  This point is illustrated by 29 C.F.R. § 790.14(a)-(b), which provides:

**§ 790.14 "In conformity with."**

(a) The "good faith" defense is not available to an employer unless the acts or omissions complained of were "in conformity with" the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy upon which he relied. This is true even though the employer erroneously believes he conformed with it and in good faith relied upon it; actual conformity is necessary.

(b) An example of an employer not acting "in conformity with" an administrative regulation, order, ruling, approval, practice, or enforcement policy is a situation where an employer receives a letter from the Administrator of the Wage and Hour Division, stating that if certain specified circumstances and facts regarding the work performed by the employer's employees exist, the employees are, in his opinion, exempt from provisions of the Fair Labor Standards Act. One of these hypothetical circumstances upon which the opinion was based does not exist regarding these employees, but the employer, erroneously assuming that this circumstance is irrelevant, relies upon the Administrator's ruling and fails to compensate the employees in accordance with the Act. Since he did not act "in conformity" with that opinion, he has no defense under section 9 or 10 of the Portal Act.

29 C.F.R. § 790.14(a)-(b)(footnote omitted). Even if it is assumed *arguendo* that Horsehead placed actual reliance on the McCutchen letter and the DeCamp letter with respect to the DOL's construction of the phrase "changing clothes" in § 203(o), Horsehead's actions could not have been "in conformity with" those letters in the absence of a collective-bargaining agreement which either expressly or implicitly excluded donning and doffing time from the "[h]ours worked" by its employees. Since Horsehead cannot establish (for purposes of summary judgment) that its collective-bargaining agreement with Local 8183 implicitly excluded such time, it cannot establish (for purposes of summary judgment) that its actions were "in conformity with" the McCutchen and DeCamp letters.

Horsehead also fails to satisfy the "good faith" element of its § 259 defense. "'Good faith' requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15(a). "Congress has put the risk of a

close case on the employer." *Reich v. IBP, Inc.*, 38 F.3d 1123, 1127 (10th Cir. 1994). Moreover, "good faith" cannot be determined solely by reference to the employer's subjective state of mind. 29 C.F.R. § 790.15(a). In order to act in "good faith" for purposes of § 259(a), an employer must act as a reasonably prudent employer would act under identical or similar circumstances. *Luna-Guerrero*, 370 F.Supp.2d at 391. Even if Horsehead could satisfy the subjective component of the "good faith" element, there is no evidence which suggests that it can satisfy the objective component. Since the express terms of the collective-bargaining agreement were silent as to the issue of compensation for the contested time, a reasonable employer in the position of Horsehead may well have acted differently.[18]

Horsehead has failed to carry its "heavy" burden of establishing, at the summary judgment stage, each element of its § 259 defense. *Luna-Guerrero*, 370 F.Supp.2d at 391 ("This burden is a heavy one, especially because if proven, this defense acts as a bar to the proceeding, absolving defendant from liability and penalties for past violations."). Accordingly, the Court must deny Horsehead's Motion for Summary Judgment with respect to § 259.

### E. Liquidated Damages

The FLSA provides that "[a]ny employer who violates the provisions of section 6 or section 7 of this Act [29 USCS §§ 206 or 207] *shall be liable* to the employee or employees

---

[18]Horsehead has produced a "verification" from Ali Alavi ("Alavi"), who has been Horsehead's Vice-President and General Counsel since December 23, 2003. Doc. No. 48 at 39-40. In the verification, Alavi stated that Horsehead has relied on the advice of outside labor and employment counsel in making determinations as to the application of the FLSA to its compensation policies. *Id.* at ¶¶ 4-7. Horsehead's position is problematic, since it asserts that its communications with its outside counsel are protected by the attorney-client privilege but nevertheless relies on such communications to support its § 259 defense. *Id.* The Plaintiffs contend that, since Horsehead relies on the advice of its outside counsel as a basis for defending this lawsuit, they should be given an opportunity to depose such counsel. Doc. No. 51 at 28, n. 16. In support of their position, they rely on *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999). At the present time, there is no discovery-related motion pending before the Court. The only motions presently at issue are Horsehead's Motion for Summary Judgment and Motion to Strike. At this stage, the Court will not informally entertain discovery-related motions.

affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b)(emphasis added).  This language has been construed to provide for "payment of both unpaid wages and an equivalent amount of *mandatory* liquidated damages."  *Martin v. National Association of Wholesaler-Distributors*, 940 F.2d 896, 907 (3d Cir. 1991)(emphasis in original). The FLSA treats liquidated damages as compensatory (and not as punitive), since such damages compensate employees for losses that they may have suffered by reason of their lack of receipt of their lawful wages in a timely manner.  *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982).

The mandatory nature of liquidated damages is subject to a court's discretionary authority to decline to award liquidated damages pursuant to 29 U.S.C. § 260, which provides:

### § 260.  Liquidated damages

In any action commenced prior to or on or after the date of the enactment of this Act [May 14, 1947] to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201 *et seq.*], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201 *et seq*], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16 of such Act [29 U.S.C. § 216].

29 U.S.C. § 260.  As the statutory language indicates, an otherwise mandatory award of liquidated damages becomes discretionary if, and only if, an offending employer "shows to the satisfaction of the court" that its violation of the FLSA occurred under circumstances evincing both subjective "good faith" and objective reasonableness.  *Id.*  The United States Court of Appeals for the Third Circuit has made it clear that a district court must make specific findings as

to both of these statutory requirements before deciding that an award of liquidated damages is not

warranted.  *Martin*, 940 F.2d at 907.  In *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121 (3d

Cir. 1984), the Third Circuit explained:

> The fact that an employer has broken the law for a long time without complaints
> from employees does not demonstrate the requisite good faith required by the
> statute.  Moreover, the employee need not establish an intentional violation of the
> Act to recover liquidated damages.  Instead, the employer must affirmatively
> establish that he acted in good faith by attempting to ascertain the Act's
> requirements.

*Williams*, 747 F.2d at 129 (internal citation omitted).  In asserting a § 260 defense, Horsehead

bears the "plain and substantial" burden of demonstrating that it is entitled to discretionary relief

from liquidated damages.  *Id.*  This burden is difficult to meet.  *Brock v. Wilamowsky*, 833 F.2d

11, 19 (2d Cir. 1987).  Even where an employer satisfies the statutory criteria enumerated in §

260, a district court retains the discretion to permit an award of liquidated damages.  29 U.S.C. §

260 (". . . the court *may*, in its sound *discretion*, award no liquidated damages . . .")(emphasis

added).  If Horsehead were to satisfy the statutory prerequisites for avoiding liability for punitive

damages, this Court would nevertheless have "substantial discretion" to permit, deny or limit an

award of liquidated damages.  *Martin*, 940 F.2d at 908 ("Assuming a district court has first

properly made the required preliminary findings of an employer's subjective good faith and

objectively reasonable grounds for violating the Act, we will review its exercise of 'substantial

discretion' to deny or limit an award of liquidated damages only for abuse of discretion.").  Thus,

if Horsehead violated the FLSA, it cannot establish an *entitlement* to be shielded from liquidated

damages.  The most that Horsehead could *establish* is the discretionary, rather than mandatory,

nature of liquidated damages in this case.

As noted earlier, Horsehead's reliance on § 203(o) despite the uncertain nature of its collective-bargaining agreement with Local 8183 precludes a determination, at the summary judgment stage, that its actions were objectively reasonable.[19]  In this instance, summary judgment must be denied for an alternative, independent reason.  When the Court bifurcated the issues in this case, discovery was stayed with respect to all issues other than whether the Plaintiffs' *claims* were *barred* by § 203(o) or the Portal Act.  Doc. No. 43.  The purpose of the bifurcation was to relieve the parties of the obligation to engage in costly (and potentially inconsequential) discovery.  Doc. No. 42 at ¶ 2.  Although § 260 is § 11 of the Portal Act, it does not relate to the question of whether the Portal Act *bars* some or all of the Plaintiffs' *claims*. Instead, it relates only to the question of whether liquidated damages should (or should not) be awarded in this case, even if no *claims* are completely *barred*.  The Court acknowledges that discovery concerning these distinct issues may overlap to a substantial degree, and the Court does not view Horsehead's assertion of a § 260 defense at this stage to be in violation of the bifurcation order.  Nevertheless, it would be inappropriate for the Court to hold, at this stage, that no liquidated damages should be awarded in this case.  As the Plaintiffs point out, discovery in this case is not yet complete.  Doc. No. 50 at 29-30.  The record is not fully developed.  Even if Horsehead were able to satisfy the statutory criteria enumerated in § 260, it would not be an exercise of "sound discretion" for the Court to rule on the issue of liquidated damages before the Plaintiffs have had an adequate opportunity to complete discovery.  Consequently, the Court

---

[19]While the defense contained in § 260 is certainly not coextensive with the defense contained in § 259, the "good faith" requirement is common to both, and the Court's "good faith" analysis concerning Horsehead's § 259 defense applies with equal force to its § 260 defense.  *Keeley v. Loomis Fargo & Co.*, 183 F.3d 257, 270 (3d Cir. 1999)(relying on decisions interpreting § 260 for the purpose of making a determination as to "good faith" under a New Jersey statute that was virtually identical to § 259).

must deny Horsehead's Motion for Summary Judgment insofar as it is based on § 260.

### F. The Statute of Limitations

The statutory provision governing the statute of limitations for FLSA actions provides that an FLSA action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). For purposes of this analysis, an employer commits a "willful violation" by engaging in conduct prohibited by the FLSA either with the knowledge that it is prohibited or with reckless disregard as to whether it is prohibited. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Where an employer acts "unreasonably," but not "recklessly," in determining its legal obligations under the FLSA, its violation of the FLSA cannot be fairly characterized as "willful." *Id.* at 135, n. 13. Horsehead argues that the Court should hold, at the summary judgment stage, that any violations of the FLSA in this case were not "willful," thereby precluding the Plaintiffs from recovering for violations predating October 7, 2004. Doc. No. 46 at 19-21.

The Plaintiffs bear the burden of proving that Horsehead's violations were "willful." *Williams v. Maryland Office Relocators, LLC*, 485 F.Supp.2d 616, 621 (D.Md. 2007). Thus, they would normally be required, at this stage, to present sufficient evidence to defeat Horsehead's Motion for Summary Judgment. Nonetheless, as the Court explained earlier, discovery has thus far been limited to the question of whether the Plaintiffs' claims are barred by § 203(o) or the Portal Act. While Horsehead may view that question broadly enough to encompass the issue of "willfulness" for purposes of the statute of limitations, Plaintiffs'

49

argument that this issue was not among the "limited matters" for which discovery was conducted is well taken.[20]  Doc. No. 51 at 29-30.  The primary focus of the parties' discovery up to this point has centered on matters which, if resolved in favor of Horsehead, would render additional discovery unnecessary.[21]  Doc. No. 42 at ¶ 2.  This cannot be said of the statute of limitations issue.  Although the statute of limitations speaks in terms of whether an action "shall be forever barred," its application in this case has more to do with the measure of damages that potentially can be awarded to the Plaintiffs than it does with whether any of their *claims* are *barred*.  Given that additional discovery in this case is necessary, and in light of the limited nature of the discovery that has occurred thus far, the Court is convinced that summary judgment on the issue of "willfulness" would be premature.   This issue, which involves complicated questions concerning Horsehead's mental state at the time of the alleged FLSA violations, will be more appropriately dealt with when the record is fully developed.[22]

### G.  The Motion to Strike

---

[20]Although the parties have stipulated that the DOL conducted an audit of the pay practices engaged in by Horsehead's predecessor corporation, Zinc Corporation of America, they "disagree as to the relevance, admissibility and/or significance of this audit."  Joint Stipulation of Undisputed Facts (Doc. No. 42-2 at ¶ 12).

[21]When they filed their Joint Motion to Bifurcate and Stay, the parties requested a determination as to whether some or all of the Plaintiffs' claims were barred by § 203(o) and the Portal Act.  Doc. No. 42 at ¶ 1.  When read in context, it is clear that the parties were primarily concerned with the Court's construction of § 203(o) and the effect thereof, if any, on the application of the Portal Act in this case.  In fact, the parties referred to § 203(o) and the Portal Act collectively as "§ 3(o)."  *Id.*  They requested "a ruling on *this issue* prior to the completion of timely and costly fact and expert discovery."  *Id.* at ¶ 2 (emphasis added).  Their reference to a single issue, rather than a multitude of issues, convinces the Court that the limited discovery contemplated by the parties at the time of their motion did not include every conceivable application of the Portal Act to this case.  Given this understanding, it would be unfair for the Court to grant summary judgment to Horsehead as to the issue of "willfulness" without giving the Plaintiffs an adequate opportunity to engage in more extensive discovery.

[22]The issue of "willfulness" is most accurately characterized as a mixed question of law and fact.  The question of whether a given defendant's "knowledge or intent" amounted to "willfulness" is a question of law, but the *existence* of such knowledge or intent must be supported by factual determinations.  *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1292 (3d Cir. 1991).  The limited nature of the discovery conducted thus far has left the Court ill-equipped to determine the issue of "willfulness" at this stage.

In their responsive brief, the Plaintiffs make reference to an OSHA citation against Horsehead. Doc. No. 51 at 2, n. 1. Horsehead has filed a Motion to Strike this reference on the ground that, under the Federal Rules of Evidence, an OSHA citation of the kind at issue here should not be admitted into evidence. Doc. No. 53. In deciding the issues related to Horsehead's Motion for Summary Judgment, the Court has not found it necessary to rely on the OSHA citation. Consequently, Horsehead's Motion to Strike will be denied as moot. *Luna-Guerrero*, 370 F.Supp.2d at 397.

## V.     CONCLUSION

Horsehead's Motion for Summary Judgment must be granted as to the question of whether the Greens and Greys worn by its employees constitute "clothes" within the meaning of § 203(o), since the Court construes that term broadly enough to include the protective *clothing* worn by Horsehead's employees. The Motion for Summary Judgment must be denied in all other aspects. Horsehead has not established, as a matter of law, that its collective-bargaining agreement with Local 8183 implicitly excluded its employees' donning, doffing and washing time from their compensable workweek in accordance with § 203(o). Horsehead's apparent failure to consider the terms of the collective-bargaining agreement precludes the entry of summary judgment with respect to the defenses asserted by Horsehead pursuant to §§ 259 and 260. The donning and doffing activities engaged in by Horsehead's employees constitute "principal" activities within the meaning of the Portal Act regardless of whether such activities are excluded under § 203(o). Hence, such activities mark the beginning and the end of the Plaintiffs' continuous workday even if they are not themselves compensable under the collective-bargaining agreement. The application of the statute of limitations in this case, which turns on

whether Horsehead's violations of the FLSA, if any, were "willful" is more appropriately addressed when the record is developed fully. Finally, Horsehead's Motion to Strike will be denied as moot. An appropriate order will follow.

Date: September 3, 2008

                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge

cc:     Eric L. Young, Esquire
        Kenney, Lennon & Egan
        3031C Walton Road
        Suite 202
        Plymouth Meeting, PA 19462

        George Basara, Esquire
        Lisa M. Passarello, Esquire
        John Goodman, Esquire
        Ibie Adeyeye, Esquire
        Buchanan Ingersoll, P.C.
        One Oxford Centre, 20th Floor
        301 Grant Street
        Pittsburgh, PA 15219

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD F. FIGAS, JAMES R. MCCABE, EDDIE W. ROBINSON, GARY B. SHAFFER, WILLIAM C. TEETS, JOHN MARCHITELLI, BERNIE HALL, PHILLIP LUCCI, and DENNIS K. POWELL, on behalf of themselves and all other similarly situated individuals,** | ) ) ) ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) )  **Civil Action No. 06-1344** )  **Electronic Filing** |
| **HORSEHEAD CORPORATION, HORSEHEAD CORP., a/k/a ZINC CORPORATION OF AMERICA,** | ) ) ) ) |
| **Defendants.** | ) ) |

**ORDER OF COURT**

AND NOW, this _____ day of _____, 2008, upon consideration of the

Defendants' Motion for Summary Judgment **(Document No. 45)** and the Defendants' Motion to

Strike **(Document No. 53)**, IT IS HEREBY ORDERED that (1) the Defendants' Motion for

Summary Judgment is **GRANTED** insofar as it seeks a determination that the protective Greens

and Greys worn by the Plaintiffs constitute "clothes" within the meaning of 29 U.S.C. § 203(o)

and **DENIED** in all other respects; and (2) the Defendants' Motion to Strike is **DENIED** on the

ground that it is moot.

_____
David Stewart Cercone
United States District Judge